DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**RODRIGUES ELIJAH WRIGHT,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D14-1701

[September 2, 2015]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Dan L. Vaughn, Judge; L.T. Case No. 562013CF001150A.

Carey Haughwout, Public Defender, and Jonathan Dodson, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Angela E. Noble, Assistant Attorney General, West Palm Beach, for appellee.

WARNER, J.

Appellant challenges his conviction for possession of a firearm or ammunition by a convicted felon. He claims that the trial court erred in denying his judgment of acquittal as to possession, but we conclude that the state's evidence was inconsistent with appellant's claim that he did not possess the firearm. He also claims fundamental error in that the evidence was insufficient to show that the firearm was not an antique. However, that was a matter of defense, which the Appellant failed to prove. Finally, we reject his claim that the state fundamentally erred because it encouraged the jury to reach a non-unanimous verdict when it argued that it could find the Appellant guilty if he possessed the firearm *or* the ammunition. As the firearm was loaded with the ammunition, Appellant was simultaneously in possession of both, and therefore there was no fundamental error. We thus affirm his conviction and sentence.

Appellant was charged with violating section 790.23, Florida Statutes (2013), because he "did unlawfully own or have care, custody, possession or control of a any [sic] firearm, ammunition, or electric weapon or device, after being convicted of a felony." The charge was based upon events

which occurred when officers with the St. Lucie County Sheriff's Office SWAT team executed a search warrant, unrelated to this case, on a residence in Fort Pierce. Prior to the execution of the warrant, two detectives were stationed in an unmarked car in a parking lot about 150-200 yards away from the residence. As other officers executed the search warrant, the detectives began scanning the crowd which had gathered to watch the event.

One of the detectives noticed a person, later identified as Appellant, approach a trash can:

> [H]e walked up to it, stopped, looked over both shoulders, opened the trash can lid. He then looked over both shoulders again, removed something from his right side, kind of picked up his shirt in one of these motions and when he went into the trash can he didn't just throw something away, his body entered inside the trash can. His upper torso, shoulders, head, arm entered inside the trash can for a moment. He came back up out of the trash can, looked over both shoulders and shut the trash can.

The other detective confirmed these observations, noting that Appellant "[p]ulls his shirt up, removes the item from his waistband and then leans over into the garbage can as to push the item down towards the bottom of the garbage can." Then, after placing the item in the can, the detective observed that Appellant "[c]loses the lid, looks over both shoulders as to kind of see[] who saw him and then turns and walks back towards the group of people." A few minutes later, Appellant returned to the trash can, opened the lid a few inches, looked in, and then closed the lid. The detectives continued to observe the can, and no one else approached it.

Another officer was directed to investigate the can. He looked inside and observed a firearm. He testified there was also trash in the can. The gun was not in the bottom of the trash can, but was "in the side to the right."

The gun was retrieved from the trash can and was found to be loaded with ammunition. Appellant, who was still standing in the area, was arrested. An officer read him his *Miranda* rights, and Appellant told the officer that he had placed trash in the can. Although no one had mentioned the caliber of the gun, Appellant then said, "I didn't put no two five in there." The gun in the trash can was a twenty-five caliber handgun.

2

At trial, the state's expert was asked whether the gun was an antique. She responded that she could not tell, because of the lack of markings on the gun; however, it was possible that the gun could have been manufactured prior to 1918. Based upon the condition of the gun, however, she could not be certain of its age. The gun was admitted into evidence, as was a magazine containing ammunition.

Defense counsel moved for a judgment of acquittal, claiming that the state had failed to prove that the Appellant possessed the firearm, as no one saw it in his hand. Defense counsel also argued that the state had not rebutted the defense's reasonable hypothesis of innocence, i.e. that he had merely thrown garbage away in the trash can. Further, Appellant claimed that the state had failed to prove that that the firearm was not an antique firearm. The court denied the motion, and after the defense rested, denied the renewed motion.

During the charge conference, the court questioned the parties on the verdict form which referred to possession of a firearm *or* ammunition. Both parties concurred that the verdict form was appropriate, as the state had charged possession of either.

In closing, the prosecutor argued that the state had proved possession, in that Appellant's actions at the trash can were inconsistent with his claim that he was just throwing garbage away. The defense then argued the opposite but also claimed that the state had failed to prove that the firearm was not an antique under section 790.001(1), Florida Statutes (2013) which defines "antique firearm." The prosecutor responded, arguing that the ammunition proved that the firearm was not an antique, because the twenty-five caliber ammunition was commercially available. However, the prosecutor also argued that even if the jury were concerned about whether the firearm was an antique, the Appellant was charged with possessing the firearm or the ammunition, so that the jury could find him guilty simply by possessing the ammunition. The defense did not object to any of this argument.

The jury found Appellant guilty of "Possession [of] Firearm Or Ammunition By Convicted Felon." The court adjudicated him guilty and sentenced him to ten years in prison. Appellant now timely appeals.

Appellant argued below, as he does on appeal, that the state failed to introduce evidence inconsistent with his reasonable hypothesis of innocence – that he was merely throwing garbage away in the trash can, into which someone else placed the gun. "The denial of a motion for

3

judgment of acquittal is reviewed de novo." *R.H. v. State*, 56 So. 3d 156, 157 (Fla. 4th DCA 2011).

A special standard of review of the sufficiency of the evidence applies in circumstantial evidence cases:

> A motion for judgment of acquittal should be granted in a circumstantial evidence case if the state fails to present evidence from which the jury can exclude every reasonable hypothesis except that of guilt. . . .
>
> It is the trial judge's proper task to *review* the evidence to determine the presence or absence of competent evidence from which the jury could infer guilt to the exclusion of all other inferences. That view of the evidence must be taken in the light most favorable to the state. The state is not required to "rebut conclusively every possible variation" of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant's theory of events. Once that threshold burden is met, it becomes the jury's duty to determine whether the evidence is sufficient to exclude every reasonable hypothesis of innocence beyond a reasonable doubt.

*State v. Law*, 559 So. 2d 187, 188-89 (Fla. 1989) (footnote and citations omitted); *see also Hodgkins v. State*, 40 Fla. L. Weekly S346, *3 (Fla. June 18, 2015) (applying the standard from *Law*).

Here, the detectives did not see exactly what Appellant placed in the trash can, but the state produced evidence inconsistent with Appellant's reasonable hypothesis of innocence that he was merely putting garbage in the can. His furtive movements, including looking both ways before pulling something out of his waistband and leaning far into the can to stow the object, are simply inconsistent with throwing away garbage. Further, he came back to the can to peek in again. Finally, he told the officer that he did not put a "two five" in the trash can, when no one told him of the caliber of the gun, and the officers even believed at the time that it was a twenty-two caliber. We conclude based upon this evidence that the court did not err in denying Appellant's motion for judgment of acquittal.

Appellant also claimed in his motion for judgment of acquittal that the state failed to prove that the firearm was not an antique, manufactured before 1918. Section 790.23, Florida Statutes (2013), makes it illegal for a convicted felon to possess "any firearm, ammunition, or electric weapon or device, or to carry a concealed weapon, including a tear gas gun or

chemical weapon or device." Section 790.001(6), Florida Statutes (2013), defines a "firearm" and states it "does not include an antique firearm unless the antique firearm is used in the commission of a crime." Section 790.001(1) defines an "antique firearm" as:

> [A]ny firearm manufactured in or before 1918 (including any matchlock, flintlock, percussion cap, or similar early type of ignition system) or replica thereof, whether actually manufactured before or after the year 1918, and also any firearm using fixed ammunition manufactured in or before 1918, for which ammunition is no longer manufactured in the United States and is not readily available in the ordinary channels of commercial trade.

§ 790.001(1), Fla. Stat. (2013).

Generally, courts have held that "whether a proscribed weapon is an antique is a matter of defense; the state is not required to prove the negative as an element of the offense." *State v. Thompson*, 390 So. 2d 715, 716 (Fla. 1980) (footnote omitted) (affirming conviction under section 790.221, Florida Statutes (1977), barring short-barreled rifles, short-barreled shotguns, and machine guns); *Holmes v. State*, 389 So. 2d 214, 214 (Fla. 5th DCA 1980) (same). Further,

> [i]n passing on a motion for judgment of acquittal where a defendant has asserted an affirmative defense, "the proper test is to determine, first, whether the defendant produced competent evidence of an affirmative defense and, second, whether the state has carried its burden of contradicting that evidence to the extent that a jury issue is made."

*B.D.K. v. State*, 743 So. 2d 1155, 1157-58 (Fla. 2d DCA 1999) (quoting *Williams v. State*, 468 So. 2d 447, 449 (Fla. 1st DCA 1985)); *see also McCoy v. State*, 56 So. 3d 37, 39-40 (Fla. 1st DCA 2010). In other words, "[t]he issue of an affirmative defense should not be resolved by a judgment of acquittal and should be submitted to the jury where the facts are disputed." *Turner v. State*, 29 So. 3d 361, 364 (Fla. 4th DCA 2010). Thus, in *Williams v. State*, 492 So. 2d 1051 (Fla. 1986), *receded from on other grounds by Brown v. State*, 719 So. 2d 882, 890 (Fla. 1998), the Florida Supreme Court determined, prior to discussing the issue of whether the antique firearm defense is available to a convicted felon, that a motion for judgment of acquittal on the antique firearm defense was properly denied where there was "ambiguity surrounding the date of manufacture of the gun." 492 So. 2d at 1053.

5

In this case, the state firearm examiner testified it was "possible that [the firearm] could be" an antique, but she could not "say for certain." She said she was not certain when the gun was manufactured because there were "not a lot of markings on the firearm" and it "didn't have a manufacturer on the firearm itself." She opined that it resembled a "Santiga Celabaron (phonetic)" firearm which was "manufactured around the earlier nineteen hundreds, perhaps the beginning of World War I, 1914, 1915 time frame." However, she testified it did not have a "matchlock," "flintlock," or a "percussion cap" ignition system. *See* § 790.001(1), Fla. Stat. (2013) (defining "antique firearm" as one "manufactured in or before 1918 (including any matchlock, flintlock, percussion cap, or similar early type of ignition system)").

The evidence presented at trial did not establish that the weapon was an antique firearm. Rather, the firearm examiner's testimony was equivocal as to whether the firearm was an antique, which created a jury question. *Cf. Turner*, 29 So. 3d at 364 (affirming denial of motion for judgment of acquittal where defendant "provided equivocal testimony as to the elements of duress" and distinguishing cases where "a defendant's otherwise reasonable, unrebutted, and unimpeached testimony in a criminal case . . . is entirely exonerating"). Therefore, Appellant did not produce competent evidence of his affirmative defense, and the trial court did not err in denying his motion for judgment of acquittal on this issue.[1]

Next, Appellant argues the state improperly encouraged the jury to reach a non-unanimous verdict, because during closing argument "[t]he prosecutor told the jury that if it was 'concerned about' the gun being an antique, it could convict for the modern ammunition," thereby "argu[ing] the jury could 'choose' to convict for the gun 'or' the ammunition." Appellant admits he did not object to this argument, but argues it is fundamental error. The Florida Supreme Court has defined fundamental error, in the context of improper closing argument, as comments that "reach[] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." *Braddy v. State*, 111 So. 3d 810, 837 (Fla. 2012) (quoting *Brooks v. State*, 762 So. 2d 879, 899 (Fla. 2000)). We do not find that these comments amounted to fundamental error, because there was no danger of a non-unanimous verdict where Appellant possessed both articles at the

---

[1] We also reject Appellant's challenge to the constitutionality of section 790.023, Florida Statutes, as he did not raise it in the trial court, and we deem it an as-applied challenge. *See Sexton v. State*, 146 So. 3d 515, 516 (Fla. 2d DCA 2014).

same time, and a finding by the jury that Appellant possessed one article necessarily means the jury found Appellant possessed the other.

Appellant argues this case is similar to *Saldana v. State*, 980 So. 2d 1220, 1221 (Fla. 2d DCA 2008), in which Saldana appealed his conviction for possession of a firearm by a convicted felon. The information charged him with owning or having in his care, custody possession or control a "9mm handgun and/or .45 caliber Ruger." *Id.* at 1221. "Although the State proceeded with one count, the information alleged further that Mr. Saldana possessed one or both guns at three separate times and places over a two-day period." *Id.* At trial, the court used a general verdict form. *Id.* "[T]he State suggested in closing argument that it did not matter which gun, if any, Mr. Saldana had on the separate occasions." *Id.* at 1222. The Second District held that the trial court "erred in using a general verdict form that did not ensure a unanimous verdict," because "[a]s a state constitutional matter, a criminal conviction requires a unanimous verdict in Florida." *Id.* (quoting *Perley v. State*, 947 So. 2d 672, 675 (Fla. 4th DCA 2007)). Accordingly, "[a]llowing the jury to convict Mr. Saldana without ensuring unanimity that the same incident constituted the charged crime compromised the validity of the verdict." *Id.*

As noted by the state, *Saldana* is distinguishable from this case, because *Saldana* involved charges by the state that the defendant had possessed different guns at different times. *See also, e.g., Perley*, 947 So. 2d at 674 (error where there was evidence of two separate attempted escapes, one from a car and one from a hospital); *Robinson v. State*, 881 So. 2d 29, 30 (Fla. 1st DCA 2004) (error for prosecutor to argue that jury could convict "if some of you believe it happened on one day and the others believe on the May 5th date and some on the February 17th date"). Here, in contrast, possession of the ammunition and possession of the gun were one and the same, because the ammunition was inside the gun at the time of possession. Thus, to the extent the state argued in closing that the jury could convict for either the gun or the ammunition, this did not constitute fundamental error by improperly suggesting a non-unanimous verdict.

Finally, because he did not object at trial, Appellant argues it was fundamental error for the state to argue that the .25 caliber ammunition, which was recovered from the gun, could be bought anywhere and was readily available when no evidence was presented on the commercial availability of the ammunition. The prosecutor claimed that the modern ammunition precluded a finding that the gun was an antique firearm. While we agree that these statements by the prosecutor were improper because they injected facts not contained in the evidence, *see Wimberly v. State*, 41 So. 3d 298, 301-02 (Fla. 4th DCA 2010) (finding argument

improper because "it injected 'facts' not contained in the evidence" and was "completely unsupported by any evidence at trial"), they did not amount to fundamental error. The ammunition was in evidence and available for the jury to inspect. Whether it was commercially available was not necessary to a conviction for possession of the ammunition. Where the evidence was also sufficient to show that Appellant possessed the ammunition, a theory to which the antique firearm defense did not apply, "there was an alternative theory of guilt for which the evidence was sufficient." *Mungin v. State*, 689 So. 2d 1026, 1030 (Fla. 1995) ("[R]eversal is not warranted where the general verdict could have rested upon a theory of liability without adequate evidentiary support when there was an alternative theory of guilt for which the evidence was sufficient." Therefore, the improper statement by the prosecutor was harmless error rather than fundamental error.).

For the foregoing reasons, we affirm the conviction and sentence.

MAY and KLINGENSMITH, JJ., concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***