ALTENBERND, Judge.
Chris Michael Miller appeals his judgments and sentences for kidnapping, aggravated battery, and aggravated assault with a deadly weapon. We affirm the kidnapping conviction and the sentence of life imprisonment as a prison releasee reoffender resulting from that conviction. We also affirm the conviction for aggravated assault and the five-year term of imprisonment for that offense. With considerable hesitancy, we affirm the conviction for aggravated battery and the related sentence. Although the assistant state attorney made an improper argument that created a risk that the jury’s verdict was not unanimous, this issue is unpreserved and we conclude that the error cannot be reversed as fundamental error.
In March 2010, Mr. Miller lived with his girlfriend. They had a disagreement with one another while attending a fair. Shortly after they returned home, Mr. Miller beat his girlfriend with a stool leg, punched her, kicked her, and threatened to kill her with a knife. The episode lasted about four hours, during which Mr. Miller prevented her from leaving the home. We will not detail the entire events during the four hours, but there was sufficient evidence to support a conviction for kidnapping with the intent to terrorize or to inflict great bodily harm pursuant to section 787.01(l)(a)(3), Florida Statutes (2009). There was also sufficient evidence to support the conviction for aggravated assault pursuant to section 784.021(l)(a), Florida Statutes (2009), which related to the threat to kill her with a knife.
The charge of aggravated battery related to the beating of the girlfriend with a stool leg. The State charged aggravated battery pursuant to section 784.045(l)(a), Florida Statutes (2009), under both of the authorized theories: (1) that Mr. Miller used a deadly weapon, i.e., the leg of the stool, and (2) that Mr. Miller knowingly caused great bodily harm during this battery. The evidence included pictures of the girlfriend’s badly bruised body and of the leg of the stool, which is roughly equivalent to a small baseball bat. The emergency room doctor described the victim’s injuries, but could not definitely state whether various bruises were caused by the leg of the stool or by a fist. The *597 doctor opined that she had not sustained a permanent injury, but he believed that the leg of the stool was capable of causing a serious bodily injury.
By the conclusion of the evidence, the State had presented a prima facie case of aggravated battery under both theories. Nonetheless, the evidence would have permitted the jury to decide that the stool leg was not a deadly weapon or that the girlfriend’s injuries did not constitute great bodily harm, permanent disability, or permanent disfigurement. Defense counsel ably argued that either the stool leg was not a deadly weapon or that it was not actually used to inflict the injuries revealed in the photographs. Counsel also ably argued that the injuries — while unpleasant to view in the photographs — were not sufficient to constitute great bodily harm, permanent disability, or permanent disfigurement.
In rebuttal, the assistant state attorney argued that the evidence established that the stool leg was a deadly weapon and that the injuries were at least permanent disfigurement. He then explained:
Now, members of the jury, according to that aggravated battery charge, let’s say three of you go back and say I don’t think she was permanently disfigured, but I do believe that she was beaten with that stool. Even if she was hit once, well, that’s aggravated battery with a deadly weapon.
Well, let’s say the other three of you say, you know, I don’t think she was hit by a stool, but I do think that scar or that tooth — that’s permanently disfigured by him, even if it was just by a fist if you believe that. Well, then your verdict still has to be guilty on aggravated battery because if it’s one or the other, you could both come to the different conclusions but reach the same re-suit and that ... he is guilty of aggravated battery.
Thus, the assistant state attorney explained to the jury that it did not need to reach a unanimous verdict on all of the elements of the charged offense. Surprisingly, the defense attorney did not object, and the trial court did not correct this misstatement of the law on its own.
The standard jury instruction on aggravated battery states:
To prove the crime of Aggravated Battery, the State must prove the following two elements beyond a reasonable doubt. The first element is a definition of battery.
1. (Defendant)
[intentionally touched or struck (victim) against [his][her] will],
[intentionally caused bodily harm to (victim) ].
Give 2a or 2b as applicable.
2. (Defendant) in committing the battery
a. intentionally or knowingly caused
[great bodily harm to (victim) ]. [permanent disability to (victim) ]. [permanent disfigurement to (victim) ].
b. used a deadly weapon.
Definition. Give if 2b alleged.
A weapon is a “deadly weapon” if it is used or threatened to be used in a way likely to produce death or great bodily harm.
Fla. Std. Jury Instr. (Crim.) 8.4.
The standard instruction does not clearly explain how to describe this offense when both options are alleged in the information. In this ease, the trial court inserted an “or” between the two options so that the instruction that was read to the jury and provided to them in writing stated:
*598 To prove the crime of Aggravated Battery, the State must prove the following two elements beyond a reasonable doubt. The first element is the definition of battery.
1. [Mr. Miller] intentionally touched or struck [victim] against her will or intentionally caused bodily harm to [victim.]
2. [Mr. Miller] in committing the battery intentionally or knowingly caused permanent disfigurement to [victim] or used a deadly weapon.
Significantly, this language is comparable to the language of the two statutes that combine to create this offense. See § 784.03(1), Fla. Stat. (2009); § 784.045(1). Unfortunately, this language does not clearly explain to the jury that there are two distinct versions of this offense and that the jury must unanimously find all of the elements necessary for one version or the other in order to convict the defendant. Thus, although the trial court used the standard instructions that require the jury to follow the law and reach a unanimous verdict, the language describing the elements of the offense of aggravated battery seemingly confirmed the assistant state attorney’s argument that the jury could be divided as to these options and still return a verdict of guilt. As is common, the verdict form did not require the jury to make a special finding as to which theory it relied upon to reach its verdict.
We are fully aware that a trial court is not required to submit a case to the jury with a verdict form that separates the elements of an offense. See Perry v. State, 10 So.3d 695 (Fla. 1st DCA 2009).[1] The verdict form is not erroneous in this case. Although we do not require the court to use forms that prove the jury reached a unanimous verdict on each element of an offense, there is no question that the law expects the jury to reach a unanimous verdict pursuant to the instructions.
The precise definition of a “unanimous” verdict is probably subject to some debate. See, e.g'., Ruth B. Ginsburg, Special Findings and Jury Unanimity in the Federal Courts, 65 Colum. L.Rev. 256, 258-60, 271 n. 10 (1965) (comparing multiple states’ meanings of a “unanimous verdict”); United States v. Correa-Ventura, 6 F.3d 1070, 1077-78 (5th Cir.1993). While jurors can undoubtedly have different assessments of the evidence and still reach a unanimous verdict, there can be no legitimate debate that the jurors must all agree that each essential legal element of an offense has been proven by the State. See Perry, 10 So.3d at 697.
There are many valid reasons why we do not micromanage the jury’s decision-making process to assure it obeys the law. The issue in this case, however, does not directly involve the jury’s actual decision-making process. Instead, the issue addresses what officers of the court can properly tell the jury about its decision-making process. In this case, the assistant state attorney’s argument was improper and the trial court’s inaction in the face of this argument is erroneous.
As described earlier, this error is unpreserved. Whether this error could be classified as a fundamental error is a very close question. The jury instructions were not legally incorrect, but they did not guard against the confusion created by the assistant state attorney’s improper argument. The argument went to a highly disputed portion of the case and may have caused the jury to misapply the law and *599 reach a verdict that was not actually unanimous. See, e.g., Barrientos v. State, 1 So.3d 1209 (Fla. 2d DCA 2009) (“In the context of jury instructions, ‘fundamental error occurs only when the omission is pertinent or material to what the jury must consider in order to convict.’ ”) (quoting State v. Delva, 575 So.2d 643, 645 (Fla.1991)).
But the supreme court has instructed us that the doctrine of fundamental error should only be relied upon in the rare case where the interests of justice present a compelling demand for its application. See Ray v. State, 403 So.2d 956, 960 (Fla.1981). The difficulty we face in this case is that the evidence for either version of aggravated battery was quite strong. It cannot be disputed that this was a vicious attack. Although it is possible that the jury reached a non-unanimous verdict in this case, given the strength of the evidence, it is more likely that the jurors were unanimous on one or both theories. Especially as to the theory that the stool leg was a deadly weapon, the evidence seems compelling to this court. Because the jury could easily have reached a lawful verdict in this context under either theory, and indeed under both theories, we conclude that we should not apply the doctrine of fundamental error.
The parties have not argued that this error is ineffective assistance on the face of the record. We decline to reach that issue in this case. On remand, Mr. Miller is certainly authorized to file a postconviction motion raising this issue as a matter of ineffective assistance of counsel.
Affirmed.
SILBERMAN and CRENSHAW, JJ„ Concur.

. Nor is this the type of situation where Mr. Miller was charged with one count of aggravated battery meant to encompass multiple and separate instances of aggravated battery. See, e.g., Perley v. State, 947 So.2d 672 (Fla. 4th DCA 2007); State v. Dell'Orfano, 651 So.2d 1213 (Fla. 4th DCA 1995).