# DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## FOURTH DISTRICT

**MEHRDAD SHAHGODARY,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D21-1252

[January 5, 2022]

Appeal from the County Court for the Nineteenth Judicial Circuit, St. Lucie County; Kathryn Nelson, Judge; L.T. Case No. 56-2020-MM-000749-A.

Carey Haughwout, Public Defender, and Benjamin Eisenberg, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Jeanine Germanowicz, Assistant Attorney General, West Palm Beach, for appellee.

DAMOORGIAN, J.

Mehrdad Shahgodary ("Defendant") appeals his conviction and sentence for one count of criminal violation of an injunction for protection against stalking. Defendant raises several issues on appeal, but we write to address only two of the issues in this opinion. Defendant argues that: (1) he was denied the right to a unanimous jury verdict, and (2) the jury instructions permitted the jury to convict him based on actions that do not violate section 784.0487, Florida Statutes (2019). Finding merit in Defendant's argument that he was denied the right to a unanimous jury verdict, we reverse and remand for a new trial.

By way of background, Defendant and the Petitioner are neighbors who live across the street from each other. Following an incident in 2018, the Petitioner applied for and obtained an injunction for protection against stalking against Defendant. The injunction prohibited Defendant from having any contact with the Petitioner, from going within 500 feet of the Petitioner's residence, or from going within 25 feet of the Petitioner's vehicle. However, because Defendant and the Petitioner are neighbors who

live within 500 feet of each other, the injunction contained the following exception: "Except the Respondent is permitted to reside in his primary residence . . . . He must have <u>NO</u> contact—verbal, physical or otherwise with Petitioner, her family, or guests at the home of the Petitioner."

On the night of April 21, 2020, the Petitioner's son arrived home and parked his vehicle in the driveway directly behind the Petitioner's vehicle. Upon exiting his vehicle, the son heard Defendant, who was standing in the middle of his own driveway, yelling expletives in an aggressive tone. This went on for about five minutes before the Petitioner, her husband, and her two daughters came outside. As the Petitioner and her family stood in their driveway, Defendant continued to yell expletives at, and make verbal threats towards, the family. According to the son, Defendant was directing his speech and threats mainly towards the Petitioner and the Petitioner's husband. At some point during the encounter, Defendant walked across the street and stood in front of the Petitioner's house. While standing approximately ten feet away from the Petitioner, Defendant continued to yell expletives. A portion of the encounter was captured on cell phone video.

When police arrived at the scene, the Petitioner showed the officers the cell phone video and a copy of the injunction. When the officers spoke with Defendant, who at this point was back inside of his residence, Defendant told the officers he was aware of the injunction but was upset due to "an ongoing dispute" involving the fact that the Petitioner has "a lot of visitors that park on the swale on their own side of the roadway."

Defendant was thereafter arrested and charged with *one* count of violation of an injunction for protection against stalking pursuant to section 784.0487, Florida Statutes (2019). The information, which tracked the language in section 784.0487, alleged that Defendant violated the injunction by either:

> (a) going to, or being within 500 feet of, the petitioner's residence, school, place of employment, or a specified place frequented regularly by the petitioner and any named family members or individuals closely associated with the petitioner,
>
> (b) committing an act of stalking against the petitioner,
>
> (c) committing any other violation of the injunction through an intentional unlawful threat, word, or act to do violence to the petitioner,

(d) telephoning, contacting, or otherwise communicating with the petitioner, directly or indirectly, unless the injunction specifically allows indirect contact through a third party,

(e) knowingly and intentionally coming within 100 feet of the petitioner's motor vehicle, whether or not that vehicle is occupied,

(f) defacing or destroying the petitioner's personal property, including the petitioner's motor vehicle, or

(g) refusing to surrender firearms or ammunition if ordered to do so by the court, in violation of Florida Statute 784.0487(4).

Prior to jury selection, the State orally amended the written information to remove paragraphs (f) and (g) as being inapplicable. The State also orally amended paragraphs (d) and (e) of the information to conform with the actual terms of the injunction. As to paragraph (d), the State included the language "the family of the petitioner or household guests of the petitioner" after the phrase "communicating with petitioner." As to paragraph (e), the State replaced the "100 feet of the petitioner's motor vehicle" language with "25 feet of the petitioner's motor vehicle."

At trial, the State argued that "Defendant willfully violated the injunction by either coming within 500 feet of the victim's residence, committing an act of stalking, threatening by word or act to do violence, communicating or contacting the victim or her family, or coming within 25 feet of the victim's vehicle." The State also told the jury that "to find the Defendant guilty, you only have to find one of those [five] provisions was violated" and that "[i]t doesn't have to be all of them." No objection was made to these statements.

Consistent with the amended information, the jury was instructed that Defendant could be found guilty if he violated the injunction in any of the five alternate ways, including by "telephoning, contacting, or otherwise communicating with [the Petitioner], the family of [the Petitioner], or household guests of [the Petitioner]." Defendant did not object to the jury instructions. Although the trial court also instructed the jury that its verdict needed to be unanimous, it did not clarify that the jury was required to unanimously agree on at least one of the five specific acts. The jury ultimately found Defendant guilty as charged. The verdict form was general in form and did not specify under which of the five provisions listed in the instructions the jury found Defendant violated the injunction.

3

On appeal, Defendant first argues the trial court fundamentally erred and denied him the right to a unanimous jury verdict by allowing the State to argue that he could be convicted of a single count of violating the injunction if he committed any of the five distinct acts listed in the jury instructions. As the State did not clarify that the jury was required to unanimously agree on at least one specific act, Defendant maintains "the message conveyed was that it would be enough for the jurors to find [Defendant] guilty if he committed any of the five alleged violations, regardless of whether the jurors agreed as to one specific violation."

As acknowledged by Defendant, "[b]ecause this argument is being made for the first time on appeal, the issue is reviewed for fundamental error." *Cherfrere v. State*, 277 So. 3d 611, 614 (Fla. 4th DCA 2019). "Fundamental error is error that 'reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.'" *Id.* (quoting *Krause v. State*, 98 So. 3d 71, 73 (Fla. 4th DCA 2012)).

"As a state constitutional matter, a criminal conviction requires a unanimous verdict in Florida." *Robinson v. State*, 881 So. 2d 29, 30 (Fla. 1st DCA 2004). This means jurors "must unanimously agree that each element of the charged offense has been established beyond a reasonable doubt." *Perry v. State*, 10 So. 3d 695, 697 (Fla. 1st DCA 2009). Thus, "where a single count embraces two or more separate offenses, albeit in violation of the same statute, the jury cannot convict unless its verdict is unanimous as to at least one specific act." *Robinson*, 881 So. 2d at 31.

An infringement upon a defendant's right to a unanimous jury verdict can result in fundamental error. For example, in *Perley v. State*, the defendant was charged with one count of escape. 947 So. 2d 672, 674 (Fla. 4th DCA 2007). At trial, the State presented evidence that the defendant escaped from police custody on two separate occasions—once during the traffic stop and once at the hospital after being arrested—and told the jury that it could convict the defendant "for either instance of escape." *Id.* In finding that the trial court fundamentally erred in allowing the jury to deliberate on two separate instances of escape, we reasoned that while presenting "dual theories of a crime" is permissible, presenting "evidence of two entirely separate incidents, separated by both time and place," compromised "the jury's ability to render a unanimous verdict." *Id.* We further explained that "[t]he State's actions ma[de] the unanimity of the jury's verdict questionable, as some members of the jury could have determined that one incident constituted escape, while others on the jury could have determined that the other incident constituted escape, rather

4

than agreeing unanimously that the same incident constituted escape." *Id.* at 674–75; *see also Chaffin v. State*, 121 So. 3d 608, 615 (Fla. 4th DCA 2013) (applying *Perley* and holding that fundamental error occurred when the State argued to the jury that it could convict the defendant of one charge of tampering with evidence "based on one of two separate instances of tampering" supported by the evidence presented at trial).

In the present case, the State charged Defendant with one count of violation of an injunction for protection against stalking under section 784.0487, Florida Statutes (2019). The statute lists several alternative ways for violating an injunction, including by:

> 1. Going to, or being within 500 feet of, the petitioner's residence, school, place of employment, or a specified place frequented regularly by the petitioner and any named family members or individuals closely associated with the petitioner;
>
> 2. Committing an act of stalking against the petitioner;
>
> 3. Committing any other violation of the injunction through an intentional unlawful threat, word, or act to do violence to the petitioner;
>
> 4. Telephoning, contacting, or otherwise communicating with the petitioner, directly or indirectly, unless the injunction specifically allows indirect contact through a third party; [or]
>
> 5. Knowingly and intentionally coming within 100 feet of the petitioner's motor vehicle, whether or not that vehicle is occupied[.]

§ 784.0487(4)(a)1.-5., Fla. Stat. (2019).

Consistent with section 784.0487(4)(a), the State argued to the jury that it could convict Defendant if he willfully violated the injunction in one of five ways and that "to find the Defendant guilty, you only have to find one of those provisions was violated." Although these statements were not in and of themselves legally incorrect, neither the State nor the trial court clarified to the jury that it was required to unanimously agree on at least one specific act. This is problematic because "[t]he language of section 784.0487(4) indicates that willful violation of an injunction can be 'violated in multiple, alternative ways,' each of which can be punished as separate offenses if they constitute distinct criminal acts." *Jacobs v. State*, 272 So. 3d 838, 841 (Fla. 2d DCA 2019) (citation omitted).

For example, in *Jacobs*, the defendant was charged with two counts of violation of a stalking injunction pursuant to section 784.0487. *Id.* at 839. The injunction in that case prohibited the defendant from contacting the victim at her place of employment or from going within 500 feet of the victim's place of employment. *Id.* Notwithstanding the injunction, the defendant threatened the victim, who was standing in front of her place of employment, while standing approximately sixty feet away from the victim. *Id.* The State thereafter charged the defendant with two counts of violation of a stalking injunction, one for being within 500 feet of the victim and the other for communicating with the victim. *Id.* at 840. The jury convicted the defendant on both counts. *Id.* On appeal, the defendant argued that the dual convictions for violation of the stalking injunction violated double jeopardy. *Id.* at 839. In rejecting that argument, the Second District reasoned that, even though the convictions were for "acts that occurred during a single criminal episode," the "two violations of the injunction were two distinct criminal acts." *Id.* at 840–41. Stated differently, "[e]ach act [was] of a separate character and type, and each [was] born of a separate impulse." *Id.* at 842. Therefore, "[b]y going to or being within 500 feet of the victim's workplace, [the defendant] committed 'a criminal act distinctively different from' his contacting or otherwise communicating with the victim." *Id.* at 841 (citation omitted).

Thus, by allowing the State to tell the jury it could convict Defendant based on any of the five distinct acts without clarifying that the jury was required to unanimously agree on at least one specific act, the trial court compromised the unanimity of the jury's verdict. This is because some jurors could have believed Defendant committed the offense by willfully coming within 500 feet of the Petitioner's home or 25 feet of her vehicle, while others may have only believed he committed the offense by willfully communicating with or making threats to the Petitioner, and still others could have only believed he committed the offense by willfully committing a stalking offense against the Petitioner. Under these circumstances, it is difficult, if not impossible, to determine for which act the jury convicted Defendant, or if the jury reached a unanimous decision. Therefore, consistent with the holding in *Perley*, we hold that the error amounted to fundamental error and reverse and remand for a new trial.

Defendant next argues the trial court fundamentally erred by instructing the jury that he could be convicted of violating the injunction for "telephoning, contacting, or otherwise communicating with [the Petitioner], *the family of* [*the Petitioner*]*, or household guests of* [*the Petitioner*]." (emphasis added). Defendant argues that the plain language of subsection 784.0487(4)(a)4. only criminalizes "[t]elephoning,

contacting, or otherwise communicating with *the petitioner*," making no reference to the petitioner's family members or household guests. (emphasis added). Although we conclude no fundamental error occurred, we do note that it was error to include this language. Subsection 784.0487(4)(a)4., unlike subsection 784.0487(4)(a)1., makes no mention of the petitioner's family or household guests, thus demonstrating the legislature only intended for violations of this subsection to be limited to circumstances where the defendant telephones, communicates, or contacts the petitioner only. *See generally State v. C.M.*, 154 So. 3d 1177, 1180 (Fla. 4th DCA 2015) ("The courts are not at liberty to add words to statutes that were not placed there by the Legislature. To do so, would be an abrogation of legislative power." (citation and internal quotation marks omitted)); *State v. James*, 298 So. 3d 90, 93 (Fla. 2d DCA 2020) ("[W]hen the legislature has included a provision in one statute, but omitted it in an analogous statute, courts should not read it into the statute from which it has been excluded.").

*Reversed and remanded.*

GROSS and CIKLIN, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***